CASE 41—PETITION ORDINARY—NOVEMBER 18.

## Young v. New Farmers Bank's Trustee.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. PRINCIPAL AND SURETY—EVIDENCE—PEREMPTORY INSTRUCTIONS. —If in a suit by a bank on a note, the first signer thereof pleads as defense that he was only surety thereon, and that he was released by an extension granted without his consent to the principal, and there was direct evidence that he was only surety and got no benefit of the proceeds of the note, but that he signed first' at the request of the principal, who got the entire proceeds, and there being evidence and circumstances tending to show that officers of the bank had knowledge of, and assented to the transaction, it was error for the court to give a peremptory instruction to find for the plaintiff.

2. EVIDENCE.—In such an action where the surety claims a release by reason of an extension granted without his consent to the principal in consideration of a payment of interest in advance, the surety should have been allowed to testify as to whether subsequently, when he wrote promising to pay the note, he knew he had been released by the advance payment of interest.

3. EVIDENCE.—Upon the trial of the issue as to whether appellant was principal or surety, one who became cashier of the bank shortly after the note in question was executed should have been permitted to testify who he was informed was principal thereon.

J. S. HURT AND TYLER & APPERSON FOR APPELLANT.

1. The evidence shows conclusively that appellant was only surety on the note sued on, and that the bank had knowledge that such was the case.

[17]

Young v. New Farmers Bank's Trustee.

2. The payment by Mitchell, the principal, of the interest in advance without the knowledge or consent of the surety, releases the surety. Norton v. Roberts, 4 Monroe, 492; Edwards v. Coleman, 6 Monroe, 575; Cooper v. Fisher, 7 J. J. M., 397; Ruble v. Norman, 7 Bush, 583; Kenningham v. Bedford, 1 B. M., 325; Calloway v. Snapp, 78 Ky., 563; Blades v. Robbins, 7 Ky. Law Rep., 197.

3. If appellant did promise to pay or secure the note at a time when he was in ignorance of the facts which released him from liability thereon, he is not bound thereby, and might recover same back if he had actually paid it. Robinson v. Offutt, 7 Monroe, 541; Emmons v. Overton, 18 B. M., 650; Blakely v. Johnson, 13 Bush, 197; Warren v. Fant, 79 Ky., 1.

THOMAS TURNER ON SAME SIDE.

1. It was held by this court in the case of Preston v. Henning & Speed, 6 Bush, 566, that the acceptance of a payment of legal interest in advance upon a debt from the principal therein without the knowledge or consent of the surety releases the surety, and was in effect an agreement between the bank and the principal to wait for payment of the debt until the time to which the interest was so paid. This case is much stronger than that, as here there was a payment of usurious interest in advance.

2. What does it matter to the bank whose name stood first on the note, if it in fact knew, through its officers, that Mitchell was principal and Young was surety? Knowing this the bank should have been held to the same fairness and openness towards the surety as if it had been recited on the face of the note that Mitchell was principal and Young surety.

3. The fact that the payments of interest in advance were made by Mitchell's check on the bank when his account was overdrawn, can not affect appellant's rights in the premises; the bank accepted said checks as money and gave credit on the debt for the amounts thereof, carried it on their books and recognized it as a payment, and is estopped from asserting that it was not a bona fide payment.

STONE & SUDDUTH AND JOHN F. GROENE FOR APPELLEE.

1. The evidence shows that appellant was principal, or co-obligor.

2. But if Young was only surety, the payment of usurious interest by Mitchell, who was then president of the bank, without the knowledge of the other officers and directors of the bank, did not release Young. Mechanics' Bank v. N. Y. &c. R. R. Co, 13 N. Y., 599; Bolles on Bank Officers, secs. 18, 38, 39, 411, 544;

Young v. New Farmers Bank's Trustee.

Jones' Assignee v. Johnson, 10 Bush, 658; United Society of Shakers v. Underwood, 9 Bush, 609; Charitable Corporation v. Sutton, 2 Atkyns, 405; Boone on Banking, sec. 133; Gallery v. National Exchange Bank, 41 Mich., 169; Dekay v. Hackensack Water Co., 38 N. J. Eq.    158; First National Bank v. Gifford, 71 Iowa, 575; Corcoran v. Snow Cattle Co., 151 Mass., 74; Innerarity v. Merchants' National Bank, 139 Mass., 332; Barnes v. Trenton Gas Light Co., 27 N. J. Equity, 36.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

This action was brought December 7, 1893, by the Columbia Finance & Trust Co., assignee of New Farmers' Bank, a State institution, on a note for $1,000, executed to the latter, April 12, 1890, by J. T. Young and Wm. Mitchell, due six months from date, and upon back of which are these endorsements: "Paid $80 up to October 12, 1891; paid $80 up to October 12, 1892." Mitchell made no defense, but Young pleaded release from obligation to pay upon grounds stated in two paragraphs:

1st. That he was merely a surety in the note, and without his consent payment thereof was extended by New Farmers' Bank beyond maturity of it in consideration of usurious interest paid in advance by Mitchell, averred to be the principal payor.

2d. That Mitchell hypothecated with New Farmers' Bank collaterals more than sufficient to discharge the note, which were held by it nearly four years without collecting or any attempt to collect them. Plaintiff in reply denied all material statements in first paragraph of the answer, but not that of the second paragraph. Trial of the action having been submitted to the jury under peremptory instruction of the court, a verdict was returned in favor of plaintiff for amount of the note and interest, only from October 13, 1893,

up to which date it appears interest at the rate of eight per cent. per annum had been paid. And the main question is whether that instruction ought to have been given.

Mitchell was, at date of the note, cashier, and when the credits were put upon it, president of New Farmers' Bank. But there was direct and positive evidence he was principal in the note and got entire benefit of the proceeds; and that Young was only surety. and got no benefit, his name being first signed at request and suggestion of Mitchell as a mere form. How credible that testimony may be, and whether the transaction was *bona fide*, it was the province of the jury, not the court, to determine. There was also evidence, both direct and circumstantial, tending to show and from which the jury might have not unreasonably inferred other officers of the bank had knowledge of and assented to the transaction; one of such circumstances being acceptance and appropriation by the bank of the two payments of usurious interest, which it is admitted were made by Mitchell; and the other, receipt of the collaterals which it is alleged in the answer, and not denied, were at date of the note, hypothecated by Mitchell. In this connection we will refer to two rulings of the lower court as to competency of evidence, both of which, we think, were erroneous. The first was an objection of plaintiff sustained to the question to Young, the defendant, whether at the time of writing to plaintiff he would pay the note, as he had on cross-examination first admitted he was aware of having been released by Mitchell paying interest on the note in advance and getting extension. The other was refusing to permit witness Grubbs, appointed cashier of New Farmers' Bank shortly after the note was

executed, to state who he was informed was principal of the note. As no avowal was made by defendant here, if permitted, the witnesses would answer either of the two questions referred to, rulings of the lower court thereon are not strictly before us for revision; but in view of a new trial determination of them now is not improper.

The law, as argued by counsel, obviously should be, and is, that an officer of a bank, being trustee or agent of the stockholders, can not, in a transaction where he is personally interested, bind the institution, much less should the bank be prejudiced by his act, if it be made to appear it was done in collusion with another, likewise having opposing interests, and in fraud of the rights of the bank. But if the transaction be legitimate or not necessarily nor intended to be a fraud on the bank, the mere fact there was miscarriage or miscalculation on part of such officer, resulting in ultimate injury or loss to the institution, should not prejudice another party, owing no special duty to it and not acting in bad faith.

The fact that Mitchell caused the note to be first signed by Young, so as to make himself appear as surety instead of principal, does not inevitably stamp the transaction fraudulent on part of Young. But what may have been Mitchell's purpose, whether good or bad, and if the latter, to what extent, if at all, Young participated in it, was the province of the jury to consider and determine.

No apparent wrong was done, nor, so far as the record shows, intended by Young, in permitting his name thus used to enable Mitchell to get and appropriate the money; for he became thereby as fully bound to pay the note when it fell due as if really the principal, instead of surety, and he had

instead of Mitchell gotten the benefit of the proceeds. Moreover, we are to assume, in present state of the pleadings, sufficient collateral security was at date of the note deposited with and accepted by the bank to cover the debt.

The wrong, if any, was done by Mitchell in extending payment of the note in consideration of usurious interest paid by himself, whereby Young, if surety, became released. But it seems to us if the directors had knowledge of that transaction, and the bank acquiesced in, appropriated and got the benefit of the two payments, Young, if also acting in good faith, should not forfeit his release thus obtained. The questions are, therefore, whether the note was executed by Young, in the manner done in good faith, and whether the two payments of usurious interest were made by Mitchell in good faith and without collusion with Young. If so, and that the jury must determine, we do not see upon what principle Young can be held liable. On the other hand, unless knowledge of the fact that Young was surety and not, as face of the note showed, principal, was brought to the directors of the bank, or, if payments on the note were not actually and in good faith made, he is liable.

Wherefore, the judgment is reversed and case remanded for new trial consistent with this opinion.